IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PATRICK CARFAGNO, et al.,<br><br>             Plaintiffs,<br><br>      v.<br><br>ACE, LTD., et al.,<br><br>             Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil No. 04-6184 (JBS)<br><br>**OPINION** |

APPEARANCES:

Alan H. Schorr, Esq.
ALAN H. SCHORR & ASSOCIATES, P.C.
5 Split Rock Drive
Cherry Hill, NJ 08003
      Attorney for Plaintiffs

Edward T. Ellis, Esq.
Jennifer T. Keegan, Esq.
MONTGOMERY, McCRACKEN, WALKER & RHOADS, LLP
Liberty View, Suite 600
457 Haddonfield Road
Cherry Hill, NJ 08002
      Attorneys for Defendants

**SIMANDLE**, District Judge:

Presently before this Court are two separate defense motions.  Defendant ACE Ltd. or ACE Limited has filed an unopposed motion to dismiss for lack of jurisdiction.  Defendant ACE American Insurance Company ("ACE American") has filed a motion to dismiss or to stay proceedings pending arbitration.  Plaintiffs have opposed Defendant ACE American's motion.  For the reasons discussed herein, Defendant ACE Limited's motion will be

granted.  Defendant ACE American Insurance Company's motion will be granted in part and denied in part.

## I.  <u>BACKGROUND</u>

A.  <u>The Parties</u>

Plaintiffs are twenty-one former employees of ACE American, who were assigned to the National Claims Facility of the ACE USA Claims division.  The following twenty individuals all reside in New Jersey: Patricia Adams, Theresa Brewer, Kaye Campbell, Barbara Clark, Patrick Carfagno, Steven Dondarski, Theresa Fox, Donna Graham, Lisa Granroth, Roberta Harmon, Vicki Huseby, Mary Beth Molloie, Jean Mangold, Jennifer Oakley, Barbara Scarpa, Betsy Simpson, Susan Tiver, Rich Ventura, Janice Wick, and Fiorella Wilkins.  Plaintiff Susan Shue resides in California. These twenty-one individuals are collectively referred to as "Plaintiffs."  When necessary, certain Plaintiffs will be addressed by name.

Defendant ACE American Insurance Company ("ACE American") is a Pennsylvania Corporation with its principal place of business in Pennsylvania.  Defendant ACE Ltd. or ACE Limited ("ACE Limited") is a Cayman Islands corporation with its principal place of business in Hamilton, Bermuda.  ACE Limited is a holding company that indirectly holds the stock of Defendant ACE American.  Neither defendant is a citizen of New Jersey.

B.   <u>Factual Allegations</u>

On or about July 2, 1999, Defendant ACE American acquired CIGNA's Property and Casualty Division.  (Compl. at ¶ 28.) Eighteen of the Plaintiffs had been CIGNA employees and became ACE American employees as a result of the acquisition.  (Carson Decl. ¶ 7.)  Plaintiff Adams began her employment with ACE American in April 2001.  (Adams Decl. ¶ 2.)  Plaintiff Harmon began her employment with ACE American as a contract employee in August 2000 and became a full-time employee of ACE American in September 2000.  (Harmon Decl. ¶ 3.)  Plaintiff Scarpa had been a contract claims representative for CIGNA and for ACE American after its purchase of CIGNA.  (Scarpa Decl. ¶ 2.)  Scarpa became a full-time, non-contract claims representative with ACE American in April 2000.  (<u>Id.</u> ¶ 3.)

On February 21, 2000, ACE Human Resources sent an email to ACE employees notifying them that the ACE Employee Guide was available on the company's intranet.  (Carson Decl. ¶ 17-18.) The email highlighted numerous ACE policies and programs but did not specifically mention the ACE American arbitration policy. (Carson Decl., Ex. 1.)  The email asked each employee to review the guide and to complete the "Receipt and Agreement Form" that is accessible through a link on the Introduction page of the guide.  (Carson Decl., Ex. 1.)  All of the Plaintiffs except Adams signed the ACE Employee Guide Receipt and Agreement form. (Carson Decl. ¶ 24.)

The on-line Employee Guide begins with an introduction page which contains two subsections.  In the section labeled "About This Guide," the following paragraph appears:

> **After you have familiarized yourself with the contents of this guide, you must print out, date and sign the** <u>**receipt**</u> **and agreement form** (click the underlined words to connect to the form) **and return it to your supervisor.  All employees must have a signed acknowledgement** [sic] **and agreement form in their personnel file.**

(Carson Decl., Ex. 2) (emphasis in original).  Further down the page is the section labeled "What's In This Guide," which describes the general contents of the guide.  The second paragraph under this heading lists the only two terms of employment:

> Although this guide contains descriptions of numerous ACE policies, procedures, programs and benefits, there are only two terms of your employment . . . .  The second is that you agree that you will not go to court to decide any employment-related claim.  Instead you must resolve all employment-related legal disputes by going to a neutral third-party arbitrator (see the <u>Employment Dispute Arbitration Policy</u>).  Nothing in this guide changes, modifies or alters these two terms of your employment.

(Carson Decl., Ex. 2) (emphasis in original).  While the discussion of the arbitration policy in the Introduction appears on page two in the exhibit submitted by Defendants, as the Court understands it, the Introduction's original form is a web page,

4

which requires scrolling up and down to see the page in its entirety.

As mentioned above, each employee who accessed the Employee Guide was prompted to access the "Receipt and Agreement" form through the Introduction page.  The "Receipt and Agreement" form contains the following clause:

> This is to acknowledge that I have received and will take the time to review the ACE Employee Guide available to me on ACE's intranet site.  I agree that it is my responsibility to read the Employee Guide and to understand and abide by the rules, policies, procedures and standards set for in the Guide.

(Carson Decl., Ex. 4.)  The employee must print out the form, print his or her name, sign and date the form.  This form does not specifically mention ACE's arbitration policy.  (Carson Decl., Ex. 4.)  Plaintiffs Brewer, Carfagno, Campbell, Clark, Dondarski, Fox, Graham, Granroth, Harmon, Huseby, Mangold, Molloie, Oakley, Scarpa, Shue, Simpson, Tiver, Ventura, Wick and Wilkins each signed the "Receipt and Agreement" form.  (Carson Decl. ¶ 24.)

In addition, Plaintiffs Adams, Granroth, Harmon, and Scarpa all signed the ACE Employment Application.  (Carson Decl. ¶ 25.) The application included the following paragraph just above the space for the employee signature:

> I AGREE THAT IN RETURN FOR BEING CONSIDERED FOR EMPLOYMENT AND/OR RECEIVING AN OFFER OF EMPLOYMENT, I WILL RESOLVE ANY DISPUTE ABOUT

> MY CANDIDACY FOR EMPLOYMENT, EMPLOYMENT OR
> CESSATION OF EMPLOYMENT <u>EXCLUSIVELY</u> THROUGH
> THE INTERNAL AND EXTERNAL EMPLOYMENT DISPUTE
> RESOLUTION PROCESSES OF MY EMPLOYER, WHICH
> INCLUDES FINAL AND BINDING **ARBITRATION** WITH A
> NEUTRAL ARBITRATOR.  I UNDERSTAND THAT MY
> EMPLOYER ALSO AGREES TO FOLLOW THE DISPUTE
> RESOLUTION PROCESSES AND THAT COPIES OF THE
> POLICIES AND PROCEDURES DESCRIBING THE
> DISPUTE RESOLUTION PROCESSES ARE AVAILABLE TO
> ME.

(Carson Decl., Ex. 5, 13, 14, 19) (capitalization and emphasis in original).

In August of 2002, ACE American decided to relocate the National Claims Facility from Cherry Hill, New Jersey to Wilmington, Delaware.  (Shilow Decl. ¶ 9.)  According to the Plaintiffs, each was forced to resign between November 22, 2002 and May 23, 2003 based on the "hardship of their commutes, the lack of functioning facilities and the lack of support personnel in those ACE offices in Wilmington, Delaware."  (Compl. at ¶¶ 26, 34.)  Upon termination of their employment, Plaintiffs had worked for ACE American and its predecessors for varying periods of time, ranging from two years to over thirty years.  (Compl. at ¶ 26.)  Plaintiffs allege that Defendants' decision to relocate the National Claims Facility to Wilmington, Delaware was a calculated move aimed at forcing workers over the age of forty to retire. (Compl. at ¶ 31.)

C.   Complaint

On October 29, 2004, Plaintiffs filed their original Complaint in the Superior Court of New Jersey, Law Division, Burlington County, followed by an Amended Complaint on November 5, 2004.  On November 15, 2004, Plaintiffs filed this Second Amended Complaint again in the Superior Court of New Jersey, Law Division, containing nine counts stemming from events surrounding Defendant ACE American's alleged constructive termination of Plaintiffs.  (Compl. at ¶ 33.)  On December 16, 2004, Defendants filed a timely Notice of Removal in this Court based on diversity of citizenship under 28 U.S.C. § 1332(a)(1).  While the Second Amended Complaint does not list specific damages sought, Plaintiffs did not dispute Defendants' contention that the amount in controversy exceeded $75,000.  Twenty of the twenty-one Plaintiffs are New Jersey residents.  The final Plaintiff is a resident of California.  Defendant ACE American is a Pennsylvania corporation, while ACE Limited is a Cayman Islands corporation.  Neither Defendant is a corporate citizen of New Jersey.

Counts One through Six and Count Nine of the Amended Complaint sound in state common law.  Count One alleges that Defendants breached their commitment to provide job security and severance packages as contained in ACE American's personnel policy manual.  (Compl. at ¶¶ 47-49.)  In Count Two, labeled "Promissory Estoppel," Plaintiffs allege that they were damaged

by their reasonable reliance upon Defendants' promise of severance.  (Compl. at ¶¶ 52-55.)  Count Three alleges that Defendants violated the covenant of good faith and fair dealing implied in Defendants' employment relationship with Plaintiffs. (Compl. at ¶¶ 57-59.)  Count Four alleges that Defendants were unjustly enriched through withholding the Plaintiffs' rightful severance packages.  (Compl. at ¶¶ 61-62.)  Plaintiffs claim in Count Five that Defendants made misrepresentations about Plaintiffs' guaranteed compensation and severance packages in order to secure Plaintiffs' assistance in the transition from CIGNA to ACE American.  (Compl. at ¶¶ 64-67.)  Count Six, labeled "Tortious Interference with Prospective Contractual Relations," alleges that Defendants conspired with unknown others to cause Plaintiffs' constructive discharge through relocation of their office from Cherry Hill, New Jersey to Wilmington, Delaware. (Compl. at ¶¶ 69-71.)  Count Nine states that Defendants conspired with unknown others to commit unlawful acts against Plaintiffs.  (Compl. at ¶¶ 89-91.)

Counts Seven and Eight claim Defendants violated state and federal statutes, respectively.  In Count Seven, Plaintiffs claim that Defendants discriminated against Plaintiffs because of their age, in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 et seq.  (Compl. at ¶¶ 73-84.)  Count Eight alleges that Defendants violated their fiduciary duty to

8

Plaintiffs under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 10001 et seq., which covers their promised severance packages.  (Compl. at ¶¶ 86-87.)

D.   Motions to Dismiss

1.   Defendant ACE Limited's Motion to Dismiss for Lack of Personal Jurisdiction

On January 10, 2005, Defendant ACE Limited filed its motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. Pro. 12(h), claiming it is not a New Jersey corporation, does not have any offices in New Jersey, does not conduct business in New Jersey, and has not designated any agent or public official to accept service of process in New Jersey. (Def. ACE Limited Br. at 2-3.)  While ACE Limited indirectly owns stock in ACE American, a company that conducts business in New Jersey, it claims that the actions of this independent subsidiary are insufficient to allow this Court to exercise jurisdiction over ACE Limited in New Jersey.  (Def. ACE Limited Br. at 6.)

Plaintiffs have not filed opposition and have not requested an extension of time to respond.

2.   Defendant ACE American's Motion to Dismiss or, in the Alternative, Stay Pending Arbitration

Also on January 10, 2005, Defendant ACE American filed its motion to dismiss or, in the alternative, to stay pending arbitration, claiming that each of the twenty-one Plaintiffs agreed to arbitrate all employment claims as a term and condition

of employment with ACE American, either by signing an employment application or the Employee Guide "Receipt and Agreement" form. (Def. ACE Amer. Br. at 1.)  ACE American further claims that the arbitration agreement is valid and enforceable under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq.  (Id. at 12.) Plaintiffs oppose this motion, arguing that the signed employment applications and Receipt and Agreement forms are not valid agreements to arbitrate.  (Pl. Opp. Br. at 1.)


## II.  DISCUSSION

A.  This Court's Jurisdiction Over Defendant ACE Limited

  1.  Standard of Review for 12(b)(2) Motion[1]

To exercise personal jurisdiction over a defendant, a federal court sitting in diversity under 28 U.S.C. § 1332 must undertake a two-step analysis.  First, the court must apply the relevant state long-arm statute to see if it permits the exercise of personal jurisdiction.  See Pennzoil Prods. Co. v. Colelli & Assocs., Inc., 149 F.3d 197, 200 (3d Cir. 1998).  Next, the court

---

[1] Defendant ACE Limited's brief states that its motion to dismiss is based on lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(h).  (Def. ACE Limited Br. at 1.)  ACE Limited then states that "Plaintiffs have not effected service of process on ACE Limited," which implicates Fed. R. Civ. P. 12(b)(5). (Id.)  The brief, however, does not again mention Fed. R. Civ. P. 12(h) or 12(b)(5).  According to the arguments set forth in ACE Limited's brief, its motion to dismiss appears to be based on lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and the Court proceeds accordingly.

must determine whether exercising personal jurisdiction would violate federal due process.  See IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998); Pennzoil, 149 F.3d at 200.  In New Jersey, this inquiry is combined into a single step because the state's long-arm statute, N.J. Civ. Prac. R. 4:4-4, permits the exercise of personal jurisdiction to the fullest limits of due process permitted by the Fourteenth Amendment.  See DeJames v. Magnificence Carriers, Inc., 654 F.2d 280, 284 (3d Cir. 1981); Decker v. Circus Circus Hotel, 49 F. Supp. 2d 743, 745 (D.N.J. 1999).

Once a party raises the defense of lack of personal jurisdiction, the burden is on the plaintiff to show that the defendant himself has purposefully directed his activities toward the residents of the forum state or otherwise "purposefully availed itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  See Hanson v. Denckla, 357 U.S. 235, 253 (1958); see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985).

A plaintiff may not rely on the pleadings alone in order to withstand a motion to dismiss for lack of personal jurisdiction. See Stranahan Gear Co., Inc. v. NL Indus., 800 F.2d 53, 58 (3d Cir. 1986); Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 66 n.9 (3d Cir. 1984).  Therefore, the plaintiff must come forward with facts sufficient to establish by a

preponderance of the evidence that the district court has personal jurisdiction over the defendant. Time Share Vacation Club, 735 F.2d at 65; see also IMO Indus., 155 F.3d at 257 ("the plaintiff bears the burden of proving that personal jurisdiction is proper"); Gehling v. St. George's Sch. of Med., 773 F.2d 539, 542 (3d Cir. 1985) ("[P]laintiff bears the burden of establishing with reasonable particularity sufficient contacts between the defendant and the forum state to support jurisdiction.").

There are two types of personal jurisdiction. A court has specific jurisdiction over the defendant when the cause of action arises out of the defendant's actual activities within the forum state. Helicoptieros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984); Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 368-69 (3d Cir. 2002); IMO Indus., 155 F.3d at 259. Conversely, when the cause of action is not based on the defendant's actions within the state, the relevant state court can still exercise jurisdiction over the defendant within the bounds of due process. This type of jurisdiction, general jurisdiction, is based on the sufficiency of the defendant's contacts with the forum state. Helicoptieros, 466 U.S. at 415 n.9. To exercise general jurisdiction over a defendant, the defendant's contacts with the forum state must "systematic and continuous." International Shoe Co. v. Washington, 326 U.S. 310, 317 (1945); Pinker, 292 F.3d at 369 n.1.

2.   This Court Does Not Have Personal Jurisdiction Over
        Defendant ACE Limited

Defendant ACE Limited claims that it does not have
sufficient contacts with New Jersey to enable this Court to
exercise general jurisdiction over it.  ACE Limited further
argues that the New Jersey activities of its independent
subsidiary, ACE American, do not give this Court specific
jurisdiction over ACE Limited.  In deciding a motion to dismiss
for jurisdictional reasons, a court must accept plaintiff's
allegations as true.  Carteret Savings Bank, FA v. Shushan, 954
F.2d 141, 142 n.1 (3d Cir. 1992).  "The burden of establishing
the requisite jurisdictional facts rests on the plaintiff as the
party alleging their existence." Lucas v. Gulf & Western
Industries, Inc., 666 F.2d 800, 805 (3d Cir. 1981).  In this
case, no opposition has been filed and Plaintiffs have not
requested an extension of time to respond.  This motion,
therefore, will be considered unopposed.

In order for this Court to exercise personal jurisdiction
over ACE Limited, ACE Limited must have sufficient contacts with
New Jersey so that it is "not unreasonable to require him to
submit to the burdens of litigation" in the state.  Burger King
Corp., 471 U.S. at 476.  This Court must perform a two-part
analysis, first evaluating ACE Limited's contacts with the forum
state and then, if sufficient contacts exist, determining whether
the exercise of personal jurisdiction offends the "traditional

13

notions of fair play and substantial justice." <u>International
Shoe</u>, 326 U.S. at 316.

This Court does not have general jurisdiction over ACE
Limited because the company's contacts with New Jersey are not
"systematic or continuous." <u>Helicoptieros</u>, 466 U.S. at 416; <u>see
also</u> <u>International Shoe</u>, 326 U.S. at 320.  In fact, ACE Limited
does not appear to have any direct contact with the forum state.
ACE Limited does not have an office in New Jersey, does not sell
any product or service in New Jersey, and does not conduct any
business in New Jersey.  (Def. ACE Limited Br. at 5-6; Mear
Decl.)  Plaintiffs have offered no evidence to challenge ACE
Limited's assertions.

The only contact ACE Limited has with New Jersey, however
remote, is its ownership of ACE American, a subsidiary that does
conduct business in New Jersey.  (Mear Decl. at ¶ 4.)  However,
"[i]t is well-established that forum contacts of a subsidiary
corporation will not be imputed to a parent corporation for
jurisdictional purposes without a showing of something more than
ownership." <u>Pfundstein v. Omnicom Group Inc.</u>, 666 A.2d 1013,
1016 (N.J. Super. Ct. App. Div. 1995).  A forum will exercise
general personal jurisdiction over a parent or holding company
"if the parent so controls and dominates the subsidiary as in
effect to disregard the latter's independent corporate
existence." <u>Id.</u> at 1017; <u>see also</u>, <u>Seltzer v. I.C. Optics, Ltd.</u>,
339 F. Supp. 2d 601, 609 (D.N.J. 2004) (holding that a court can

exercise jurisdiction over the parent where the subsidiary is merely the "alter ego or agent of the parent" and "separate corporate entities [are] disregarded").

In determining whether the subsidiary is merely an agent of the parent company, courts will consider "common ownership, financial dependency, interference with a subsidiary's selection of personnel, disregard of corporate formalities, and control over a subsidiary's marketing and operational policies." Pfundstein, 666 A.2d at 1017.  In this case, ACE Limited and ACE American maintain separate accounting records and bank accounts, are managed by separate Boards of Directors, with each company making its own personnel decisions and managing its own day-to-day operations.  (Def. ACE Limited Br. at 9; Mear Decl. at ¶¶ 4, 15-16.)  As the Plaintiffs have not submitted any information to the contrary, this Court finds that ACE American is neither ACE Limited's agent nor alter ego.  Therefore, this Court does not have general personal jurisdiction over ACE Limited.

Likewise, this Court does not have specific jurisdiction over ACE Limited.  Specific jurisdiction exists when a plaintiff's cause of action arises from a defendant's "forum-related conduct."  Helicoptieros, 466 U.S. at 414 n.8.  There is no evidence in the record or even any allegations in the Complaint that ACE Limited "purposefully directed" its activities at the forum state.  Burger King, 471 U.S. at 472.  Plaintiffs have presented no evidence to suggest that ACE Limited was in any

15

way involved in the decision to move the location of Plaintiffs'
office from New Jersey to Delaware.  Additionally, Plaintiffs
failed to provide any evidence that ACE Limited was a party to
the employment relationship with ACE American.  For these
reasons, this Court does not have specific personal jurisdiction
over Defendant ACE Limited.

Because this Court has concluded that ACE Limited does not
have sufficient contacts with New Jersey, it is not necessary to
complete the second step in the analysis, the determination of
whether this Court's exercise of personal jurisdiction over ACE
Limited complies with "traditional notions of fair play and
substantial justice."  International Shoe, 326 U.S. at 316.

B.   ACE American's Motion to Dismiss or, in the Alternative,
     Compel Arbitration

Defendant ACE American seeks to dismiss Plaintiffs'
Complaint or to stay the proceeding and compel binding
arbitration of Plaintiffs' claims because, it argues, Plaintiffs
are bound by the terms of ACE American's Employee Dispute
Arbitration Policy.  The Employee Dispute Arbitration Policy is
fully outlined in the ACE Employee Guide which is available on
ACE's intranet.  (Carson Decl., Ex. 1.)  Plaintiffs argue that
because the arbitration policy was not specifically mentioned on
the "Receipt and Agreement" form signed by twenty of the twenty-
one Plaintiffs, it cannot be "considered a knowing agreement to
arbitrate and waive the right to sue."  (Pls. Opp. Br. at 1.)

16

Plaintiffs also argue that the employment application containing an agreement to arbitrate signed by Plaintiffs Adams, Granroth, Harmon, and Scarpa is not binding because these Plaintiffs were not presented with a copy of the arbitration policy before signing the application.  (Pls. Opp. Br. at 15).

The issue presently before this Court is whether Plaintiffs agreed to arbitrate all claims arising from their employment or the termination thereof.  If this Court finds that Plaintiffs did agree to the terms of ACE's arbitration policy by signing either the "Receipt and Agreement" form or the employment application, then Defendant ACE American's motion to compel arbitration of Plaintiffs' claims must be granted and Plaintiffs' Complaint will be dismissed.  Otherwise, Defendant's motions must be denied and Plaintiffs' claims shall proceed to trial in this Court.

1.   Enforcement of Arbitration Agreements

Congress passed the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., in 1925 to ensure that agreements to arbitrate claims would be enforceable to the same extent as other contracts.  Section 2 of the FAA provides, in relevant part:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for revocation of any contract.

17

9 U.S.C. § 2; <u>Seus v. Nuveen & Co., Inc.</u>, 146 F.3d 175, 178 (3d Cir. 1998).  Federal courts must look to state contract law to determine if a valid agreement to arbitrate exists.  <u>See</u> <u>First Options of Chicago, Inc. v. Kaplan</u>, 514 U.S. 938, 944 (1995) (citations omitted); <u>Blair v. Scott Specialty Gases</u>, 283 F.3d 595, 603 (3d Cir. 2002); <u>Sarbak v. Citigroup Global Markets, Inc.</u>, 354 F. Supp. 2d 531, 537 (D.N.J. 2004).  This is so because "'a submission to arbitration is essentially a contract, and the parties are bound to the extent of that contract.'" <u>Caruso v. Ravenswood Developers, Inc.</u>, 767 A.2d 979, 983 (N.J. Super. Ct. App. Div. 2001) (quoting <u>Local 462, Int'l Brotherhood of Teamsters v. Charles Schaefer & Sons, Inc.</u>, 539 A.2d 295 (N.J. Super. Ct. App. Div. 1988)).

The New Jersey Supreme Court has recognized the "favored status afforded to arbitration," <u>Garfinkel v. Morristown Obstetrics & Gynecology Associates</u>, 773 A.2d 665, 670 (N.J. 2001), and that arbitration agreements should be liberally construed.  <u>Marchak v. Claridge Commons, Inc.</u>, 633 A.2d 531, 535 (N.J. 1993).  At the same time, New Jersey courts have stated that a contractual provision in which a party elects arbitration as the exclusive remedy must be read in light of the effect that provision has on the party's right to sue.  <u>Quigley v. KPMG Peat Marwick, LLP</u>, 749 A.2d 405, 416 (N.J. Super. Ct. App. Div. 2000) (citing <u>Marchak</u>, 633 A.2d at 535).  <u>See</u> <u>also</u> <u>Garkinkel</u>, 773 A.2d at 670 (citing <u>Marchak</u>, 633 A.2d at 535); <u>Alamo Rent A Car, Inc.</u>

18

v. Galarza, 703 A.2d 961, 963-64 (N.J. Super. Ct. App. Div. 1997)(holding arbitration agreement language insufficient to constitute a knowing and voluntary waiver of statutory rights). "'A clause depriving a citizen of access to the courts should clearly state its purpose,'" especially when the choice is to arbitrate disputes rather than litigate them.  Id.  This is to ensure that the parties know that by agreeing to arbitrate they are waiving their time-honored right to sue.   Id.  Therefore, waivers of statutory rights to sue, in favor of an agreement to arbitrate such claims, "'must be clearly and unmistakably established, and contractual language alleged to constitute a waiver will not be read expansively.'" Quigley, 749 A.2d at 415 (quoting Red Bank Reg'l Educ. Ass'n v. Red Bank Reg'l High School Board of Educ., 393 A.2d 267 (1978)).  Finally, although arbitration clauses are liberally construed, courts have generally still applied the common law rule that ambiguous language should be construed against the drafting party.  See Quigley, 749 A.2d at 415 (citing Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 53 (1995)).  So, while the state favors liberally interpreting arbitration contracts, "there must be an unambiguous writing that clearly establishes that an employee intended to waive the right to sue."  Sarbak, 354 F. Supp. 2d at 537.

If a party to a binding arbitration agreement is sued in federal court on a claim within the scope of the agreement, that

party is entitled under the FAA to a stay of the court proceeding

pending arbitration, Section 3,[2] and to an order compelling

arbitration, Section 4.[3]   See Seus, 146 F.3d at 178-79.  If all

of the claims involved in the action are arbitrable, then a court

may dismiss the federal action rather than staying it.  See Seus,

---

[2] Section 3 reads:

> If any suit or proceeding be brought in any
> of the courts of the United States upon any
> issue referable to arbitration under an
> agreement in writing for such arbitration,
> the court in which such suit is pending, upon
> being satisfied that the issue involved in
> such suit or proceeding is referable to
> arbitration under such an agreement, shall on
> application of one of the parties stay the
> trial of the action . . . .

9 U.S.C. § 3.

[3] Section 4 of the FAA reads:

> A party aggrieved by the alleged failure,
> neglect, or refusal of another to arbitrate
> under a written agreement for arbitration may
> petition any United States District Court
> which, save for such agreement, would have
> jurisdiction under Title 28, in a civil
> action or in admiralty of the subject matter
> of a suit arising out of the controversy
> between the parties, for an order directing
> that such arbitration proceed in a manner
> provided for in such agreement. . . .  The
> court shall hear the parties, **and upon being
> satisfied that the making of the agreement
> for arbitration or the failure to comply
> therewith is not an issue**, the court shall
> make an order directing the parties to
> proceed with arbitration in accordance with
> the terms of the agreement.

9 U.S.C. § 4 (emphasis added).

20

146 F.3d at 179 (referencing Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992) and Dancu v. Coopers & Lybrand, 778 F. Supp. 832, 835 (E.D. Pa. 1991), aff'd, 972 F.2d 1330 (3d Cir. 1992)).

In addressing a motion to compel arbitration, a court must determine 1) whether the parties agreed to arbitrate; 2) the scope of that agreement; and 3) whether Congress intended the asserted federal claims to be nonarbitrable.  See Hooters of America, Inc. v. Phillips, 39 F. Supp.2d 582, 609-10 (D.S.C. 1998)(citing Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 844 (2d Cir. 1987)).  In the present case, the parties disagree on whether a valid agreement to arbitrate existed between the Plaintiffs and ACE American.  This Court, therefore, must determine whether Plaintiffs knowingly agreed to arbitrate all claims arising from their employment or the termination thereof, and to waive their right to litigate, when each either signed a Receipt and Agreement form or the employment application.

2.   ACE American Employment Application

Plaintiffs Adams, Granroth, Harmon, and Scarpa each signed the ACE American Employment Application prior to commencing their employment with ACE American.  (Carson Decl. ¶ 25.)  The following arbitration clause appeared almost directly above the space on the application where each of these four Plaintiffs signed the application:

21

> I AGREE THAT IN RETURN FOR BEING CONSIDERED
> FOR EMPLOYMENT AND/OR RECEIVING AN OFFER OF
> EMPLOYMENT, I WILL RESOLVE ANY DISPUTE ABOUT
> MY CANDIDACY FOR EMPLOYMENT, EMPLOYMENT OR
> CESSATION OF EMPLOYMENT <u>EXCLUSIVELY</u> THROUGH
> THE INTERNAL AND EXTERNAL EMPLOYMENT DISPUTE
> RESOLUTION PROCESSES OF MY EMPLOYER, WHICH
> INCLUDES FINAL AND BINDING **ARBITRATION** WITH A
> NEUTRAL ARBITRATOR.  I UNDERSTAND THAT MY
> EMPLOYER ALSO AGREES TO FOLLOW THE DISPUTE
> RESOLUTION PROCESSES AND THAT COPIES OF THE
> POLICIES AND PROCEDURES DESCRIBING THE
> DISPUTE RESOLUTION PROCESSES ARE AVAILABLE TO
> ME.

(Carson Decl., Ex. 5, 13, 14, 19) (capitalization and emphasis in

original).  The parties do not dispute that Plaintiffs Adams,

Granroth, Harmon, and Scarpa signed employment applications

containing the above provisions.  Instead, Plaintiffs contend

that the agreement to arbitrate should not be enforced because

"ACE[] breach[ed] [] its agreement by the failure to make the

arbitration term of employment in the Employee Guide available to

the signers of the employment application . . . ."  (Pls. Opp.

Br. at 15.)

In <u>Martindale v. Sandvik</u>, 800 A.2d 872 (N.J. 2002), the New

Jersey Supreme Court, declaring its agreement with numerous other

jurisdictions, held that an agreement to arbitrate in an

employment application is valid, "as would be any other

contractual term not contrary to public policy contained in a

signed employment application." <u>Martindale</u>, 800 A.2d at 878-79

(citations omitted).  As in <u>Martindale</u>, this Court must decide

whether the arbitration provision in the employment application

22

"qualifies as a valid and enforceable contract." <u>Martindale</u>, 800 A.2d at 878.

In clear and unambiguous language, Plaintiffs Adams, Granroth, Harmon, and Scarpa agreed that any dispute arising out of the employment relationship with ACE American would be resolved "<u>EXCLUSIVELY</u>" through final and binding arbitration. (Carson Decl., Ex. 5, 13, 14, 19) (capitalization and emphasis in original).  The language of the provision makes it clear that these four Plaintiffs waived "their time-honored right to sue" in favor of arbitration to settle a dispute related to his or her employment with ACE American.  <u>Garfinkel v. Morristown Obstetrics & Gynecology Associates</u>, 773 A.2d 665, 670 (N.J. 2001).  In addition, no separate employment agreement is needed to enforce this provision.  <u>Martindale</u>, 800 A.2d at 878.  Furthermore, the employment application clearly informed each employee that the detailed policies were available to each applicant for inspection.  <u>Sarbak</u>, 354 F. Supp. 2d at 540.  Plaintiffs adduced no evidence that they were denied access to the detailed arbitration policy or that they did not understand the arbitration policy.  <u>Sarbak</u>, 354 F. Supp. 2d at 539-40.

Thus, there is no merit to the argument of Plaintiffs Adams, Granroth, Harmon and Scarpa that the clause should be held invalid because the arbitration policy was not made available to each of the four before signing.  Therefore, the agreement to

arbitrate in the employment application is binding as to
Plaintiffs Adams, Granroth, Harmon, and Scarpa.

     3.   <u>"Receipt and Agreement" Form</u>

     Plaintiffs argue that the "Receipt and Agreement" form
signed by twenty of the twenty-one[4] plaintiffs does not
constitute a valid agreement to arbitrate.  Specifically,
Plaintiffs contend that the "Receipt and Agreement" form did not
contain language clearly stating that employees were agreeing to
ACE American's arbitration policy.  (Pls. Opp. Br. at 1.)
Therefore, Plaintiffs argue, these twenty Plaintiffs cannot be
deemed to have waived their right to sue.  (Pls. Opp. Br. at 1.)

     The relevant portion of the "Receipt and Agreement" form
states:

> This is to acknowledge that I have received
> and will take the time to review the ACE
> Employee Guide available to me on ACE's
> intranet site.  I agree that it is my
> responsibility to read the Employee Guide and
> to understand and abide by the rules,
> policies, procedures and standards set forth
> in the Guide.

(Carson Decl., Ex. 4.)  The above language is located directly
above the space upon which employees must sign and date the form.
There is no mention of the arbitration policy anywhere on this
form signed by the twenty Plaintiffs.  Plaintiffs argue that this
Court's ruling in <u>Parker v. Hahnemann University Hospital</u>, 2001

---

    [4] Patricia Adams is the only plaintiff who did not sign the
"Receipt and Agreement" form.

U.S. Dist. LEXIS 10661 (D.N.J. 2001), is dispositive in this case.  Similar to Parker, this Court must decide whether Plaintiffs agreed to arbitrate all claims surrounding their employment with ACE American, and to give up their right to trial of such claims.

The facts in the present case are indeed similar to those in Parker.  In that case, the plaintiff signed an Employee Acknowledgment Form Addendum, which "provided only that plaintiff 'acknowlege[d] receipt of the employees handbook and agree[d] to abide by its terms. . . .'" Parker, 2001 U.S. Dist. LEXIS at 20.  This acknowledgment form was located immediately after the "clearly marked" section in the employee guide describing the employer's arbitration policy.  Id. at 5 n.2.  In Parker, the issue was "whether plaintiff agreed to arbitrate all claims arising from her employment or the termination thereof, where the terms of the [employer's Fair Treatment Policy] were detailed fully in an employee handbook, of which plaintiff acknowledged receipt, but where the signed employment offer explicitly incorporating the terms of the [Fair Treatment Policy] did not mention arbitration." Id. at 9.

In the case at bar, the email Plaintiffs received from ACE American Human Resources announcing the online Employee Guide did not mention that employees would be required to agree to mandatory and binding arbitration.  (Def. Br., Ex. 1.)  Moreover, Plaintiffs claim that because the "Receipt and Agreement" form

25

did not mention arbitration, Plaintiffs cannot be held to have validly agreed to arbitrate.  (Pls. Opp. Br. at 6.)  Further, Plaintiffs each maintain, in almost identical language in their declarations, that they did not read beyond the link to the "Receipt and Agreement" form on the Introduction page of ACE American's online Employee Guide.  (Pls. Decls.)  If Plaintiffs had scrolled to the bottom of the Introduction page, they would have been informed of the terms of employment, which included ACE American's arbitration policy.  (Def. Br., Ex. 2.)  This Court must determine whether this case can be distinguished from Parker because Plaintiffs were required to access the "Receipt and Agreement" form through the Introduction page that stated that arbitration was a term of Plaintiffs' employment.

This Court concludes that the present case is not distinguishable from Parker.  The "Receipt and Agreement" form is not an enforceable waiver of Plaintiffs' right to sue.  Although employees must view the Introduction page in order to access the "Receipt and Agreement" form, the discussion of the arbitration policy was located at the bottom of the page.  ACE American's email to the employees, while making no mention of the arbitration policy, clearly stated that the "Receipt and Agreement" form was a "required part of [the employee's] personnel file" and had to be signed and returned to the employee's manager within two weeks.  (Def. Br., Ex. 1.)  The email also stated that the "Receipt and Agreement" form could be

26

accessed through a link on the Introduction page.  It is
conceivable, as Plaintiffs argue, that an employee would not
scroll to the end of the page once the link to the form they were
required to return was apparent.

Furthermore, the facts of this case weigh more heavily in
favor of Plaintiffs than in <u>Parker</u>.  In <u>Parker</u>, the plaintiff had
a physical copy of the employee guide detailing the employer's
Fair Treatment Policy to which to refer.  In this case, the only
tangible piece of the employee guide which Plaintiffs were
required to print was the "Receipt and Agreement" form, which did
not mention arbitration.  Had ACE American included language on
the "Receipt and Agreement" form that made employees aware that
by signing they were waiving their right to sue, this case could
have a different outcome.[5]  As it stands, the twenty Plaintiffs
did not manifest their intent to waive their right to sue by
signing the "Receipt and Agreement" form.[6]

_____

[5] In <u>Parker</u>, there was an additional form that plaintiff did
not sign that specifically stated that the employee would be
bound by "final and binding arbitration."  <u>Parker</u>, 2001 U.S.
Dist. LEXIS at 20-21.  This Court stated that had the <u>Parker</u>
plaintiff signed the form, the case would have resulted
differently.  Similarly, Plaintiffs in the present case point to
an earlier version of the receipt and agreement used by ACE
American's predecessor CIGNA.  Plaintiffs claim that earlier
version specifically stated that the signing employee was
agreeing to final and binding arbitration.  (Pls. Opp. Br. at 4.)
While much of ACE American's employee guide was based on CIGNA's
prior guide, ACE American chose not to adopt CIGNA's "Receipt and
Agreement" form.

[6] The cases from other jurisdictions cited by the plaintiff
in <u>Parker</u> that address the handbook issue continue to support

### III.   <u>CONCLUSION</u>

For the reasons expressed above, Defendant ACE Limited's uncontested motion to dismiss for lack of personal jurisdiction will be granted.  Defendant ACE American's motion to dismiss or, in the alternative, to stay pending binding arbitration will be granted as to Plaintiffs Patricia Adams, Lisa Granroth, Roberta Harmon, and Barbara Scarpa, whose claims are dismissed without prejudice to pursuing same in arbitration, because these four Plaintiffs have waived their right to bring this suit under the arbitration clauses of their employment application and contract. Defendant ACE American's motion to dismiss or to compel arbitration will be denied as to Plaintiffs Theresa Brewer, Kaye Campbell, Barbara Clark, Patrick Carfagno, Steven Dondarski, Theresa Fox, Donna Graham, Vicki Huseby, Mary Beth Molloie, Jean Mangold, Jennifer Oakley, Susan Shue, Betsy Simpson, Susan Tiver, Rich Ventura, Janice Wick, and Fiorella Wilkins; these seventeen

---

this Court's decision in the present case.  <u>See</u> <u>Kummertz v. Tech Mold, Inc.</u>, 152 F.3d 1153 (9th Cir. 1988)(finding signed "Information Booklet Acknowledgment" insufficient to form agreement to arbitrate, where acknowledgment did not specifically refer to arbitration); <u>Nelson v. Cyprus Bagdad Copper Corp.</u>, 119 F.3d 756 (9th Cir. 1997), <u>cert. denied</u>, 523 U.S. 1072 (1998)(finding acknowledgment of receipt of handbook and agreement to read same insufficient to form agreement to arbitrate); <u>cf.</u> <u>Patterson v. Tenet Healthcare, Inc.</u>, 113 F.3d 832 (8th Cir. 1997)(finding Tenet acknowledgment form that advised employee of the mandatory and binding arbitration process was sufficient to create and agreement to arbitrate); <u>Hooters of America v. Phillips</u>, 39 F. Supp. 2d 582 (D.S.C. 1998)(finding an agreement to arbitrate where Phillips signed two forms specifically detailing arbitration).

Plaintiffs have not waived their right to litigate their employment-related claims in the on-line procedures used by the employer in this case.


**June 28, 2005**                           s/ *Jerome B. Simandle*
DATE                                        JEROME B. SIMANDLE
                                            United States District Judge